WO

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Jessica H.,

Plaintiff,

v.

Commissioner of Social Security Administration,

Defendant.

No. CV-25-01762-PHX-SHD

**ORDER**

Claimant Jessica H. ("Claimant")[1] seeks review of the Social Security Administration Commissioner's ("SSA") final decision denying her benefits under Title XVI of the Social Security Act. For the reasons set forth below, the Administrative Law Judge's ("ALJ") decision is **affirmed.**

## I. BACKGROUND

### A. The SSA's Five-Step Evaluation Process

To qualify for Supplemental Security Income, a claimant must show that she is "disabled." 42 U.S.C. § 1382(a)(1). To be "disabled," the claimant must be unable to engage in "substantial gainful activity" due to "any medically determinable physical or mental impairment." *Id.* § 1382c(a)(3)(A). The impairment must be of such severity that the claimant cannot do her previous work or any other substantial gainful work within the national economy. *Id.* § 1382c(a)(3)(B). The SSA has created a five-step sequential

[1] As a matter of practice, Claimant is referred to as such and, at most, by her first name and last initial to protect her privacy.

evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 416.920(a)(1). The steps are followed in order, and each step is potentially dispositive. *See id.* § 416.920(a)(4).

At Step One, the ALJ determines whether the claimant is engaging in "substantial gainful activity." *Id.* § 416.920(a)(4)(i). "Substantial gainful activity" is work activity that is (1) "substantial," i.e., doing "significant physical or mental activities"; and (2) "gainful," i.e., usually done "for pay or profit." *Id.* § 416.972(a)–(b). If the claimant is engaging in substantial gainful work activity, the ALJ will find the claimant is not disabled. *Id.* § 416.920(a)(4)(i).

At Step Two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" or severe "combination of impairments." *Id.* § 416.920(a)(4)(ii). To be "severe," the claimant's impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the ALJ will find the claimant is not disabled. *Id.* § 416.920(a)(4)(ii).

At Step Three, the ALJ determines whether the claimant's impairment(s) "meets or equals" an impairment listed in 20 C.F.R. Part 404. *Id.* § 416.920(a)(4)(iii). If so, the ALJ will find the claimant is disabled, but if not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to Step Four. *Id.* §§ 416.920(a)(4)(iii), (e). The claimant's RFC is her ability to perform physical and mental work activities "despite [her] limitations," based on all relevant evidence in the case record. *Id.* § 416.945(a)(1). To determine the RFC, the ALJ must consider all the claimant's impairments, including those that are not "severe," and any related symptoms that "affect what [the claimant] can do in a work setting." *Id.* §§ 416.945(a)(1)–(2).

At Step Four, the ALJ determines whether the claimant has the RFC to perform the physical and mental demands of "[her] past relevant work." *Id.* §§ 416.920(a)(4)(iv), (e). Past relevant work is work the claimant has done within the relevant time period. *Id.* § 416.965. If the claimant has the RFC to perform her past relevant work, the ALJ will

find the claimant is not disabled. *Id.* § 416.920(a)(4)(iv). If the claimant cannot perform her past relevant work, the ALJ will proceed to Step Five in the sequential evaluation process.

At Step Five, the last in the sequence, the ALJ considers whether the claimant "can make an adjustment to other work," considering her RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v). If so, the ALJ will find the claimant not disabled. *Id.* If the claimant cannot make this adjustment, the ALJ will find the opposite. *Id.*

**B. Prior Application and Decision**

Prior to the instant application, Claimant protectively filed a Title XVI application for supplemental security income on May 7, 2018, and a Title II application for child's insurance benefits based on disability (collectively, the "Prior Application"). (AR 65.) Both applications alleged disability beginning January 1, 2012. (*Id.*) Her claims were initially denied on October 10, 2018, and upon reconsideration on March 29, 2019. (*Id.*) A telephonic hearing was held on August 27, 2020, at which Claimant amended her alleged onset date to January 21, 2015. (*Id.*) The ALJ assigned to her Prior Application (the "Prior ALJ") issued an unfavorable decision on September 23, 2020 (the "Prior Decision"). (AR 75.) In that decision, the Prior ALJ found that Claimant had a severe impairment of brain tumor with status post surgery, (AR 68), and the following RFC:

> [Claimant can] perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: She can occasionally climb ladders, ropes, and scaffolds, and she can tolerate occasional exposure to vibration and hazards, such as unprotected heights or moving machinery.

(AR 70.) After conducting the five-step sequential analysis, the Prior ALJ concluded that Claimant had not been under a disability from January 21, 2015, through the date of that decision. (AR 75.) The Appeals Council denied Claimant's request for review of the Prior Decision on February 22, 2021. (AR 20.)

**C. Current Application**

Claimant was 24 years old on the amended alleged disability onset date of May 26, 2021. (AR 37.) She has a high school education and no past work. (AR 254.) On May

26, 2021, Claimant protectively filed a Title XVI application for supplemental security income, alleging disability beginning January 1, 2012. (AR 20.) The claim was initially denied on December 22, 2021, and upon reconsideration on January 24, 2023. (*Id.*) A telephonic hearing was held on December 5, 2023, during which Claimant amended her alleged onset date to May 26, 2021, the protective filing date. (*Id.*) The ALJ issued an unfavorable decision on May 1, 2024. (AR 26.) The Appeals Council denied Claimant's request for review on April 15, 2025. (AR 1–3.) Claimant then appealed. (Doc. 1.)

In her decision, the ALJ first assessed whether Claimant was subject to, and had rebutted, a presumption of continuing nondisability, finding that she was subject to that presumption and had not rebutted it. (AR 20–26.) The ALJ started her analysis by noting that the current claim involved an unadjudicated period beginning on the amended alleged onset date and arose under the same title of the Act as the Prior Application. (AR 22.) She then found that Claimant had not shown changed circumstances (1) by a change in age category, because she was a "younger individual" at the time of both the Prior Decision and the current decision; (2) by alleging an impairment not previously considered, because the Prior ALJ had considered her brain tumor and its residual effects, right-sided weakness, right facial paralysis, double vision, dry eye syndrome, and migraines; or (3) by showing a change in the criteria for determining disability, because Claimant did not argue that such a change had occurred. (AR 22–23.)

More importantly, at least for purposes of this appeal, the ALJ next found that Claimant had not shown an increase in the severity of her impairments. (AR 23–25.) Finally, the ALJ found that Claimant had not shown any other changed circumstances affecting the issue of disability with respect to the unadjudicated period. (AR 26 (noting that Claimant's representative declined to present an argument regarding additional possible changed circumstances at the hearing).) Accordingly, the ALJ concluded that because Claimant had not shown any changed circumstances, the presumption of nondisability continued and thus Claimant was not disabled from the amended alleged

onset date through the date of the decision. (*Id.*)[2]

## II. LEGAL STANDARD

District courts may not set aside a final denial of disability benefits unless the ALJ's decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels*, 874 F.3d at 654 (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). Courts must consider the record in its entirety, "weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). But the ALJ—not a reviewing court—is responsible for resolving ambiguities, resolving conflicts in medical testimony, determining credibility, and drawing logical inferences from the medical record. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Therefore, if the evidence of record could support more than one rational interpretation, "the ALJ's decision should be upheld." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [courts] must defer to the ALJ's conclusion.").

## III. DISCUSSION

Claimant argues that the ALJ committed harmful error by finding no increase in severity of her established impairments and thus applying the presumption of continuing nondisability to find that she is not disabled. (*See generally* Doc. 10.) She further argues that because there was new and material evidence concerning her impairments, the ALJ was free to assess a more restrictive RFC than the one set forth in the Prior Decision, but

[2] Because the ALJ found that the presumption had not been rebutted, she did not proceed to the five-step sequential evaluation, nor did she assess Claimant's RFC for the unadjudicated period. (*See* AR 20–26.)

erred in declining to do so based on res judicata. Claimant requests remand for further proceedings, including a de novo hearing and a new decision that properly considers her worsening condition.

**A. Res Judicata and the Presumption of Nondisability**

The principles of res judicata apply to administrative decisions. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988) (recognizing the doctrine's applicability to Social Security cases but noting that the doctrine is "applied less rigidly to administrative proceedings than to judicial proceedings"). A prior final decision finding a claimant not disabled creates a presumption of continuing nondisability. *Id.*; *Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985). To overcome that presumption, the claimant "must prove 'changed circumstances' indicating a greater disability." *Chavez*, 844 F.2d at 693; *see also Withey v. Astrue*, 2011 WL 3648273, at *8 (D. Ariz. Aug. 19, 2011) (holding that ALJ properly concluded that the claimant had rebutted presumption due to existence of impairments not previously considered).

The SSA applies *Chavez* within the Ninth Circuit through Acquiescence Ruling 97-4(9), 1997 WL 742758 (S.S.A. Dec. 3, 1997) (the "Ruling"). *See McNabb v. Barnhart*, 340 F.3d 943, 944 (9th Cir. 2003) (explaining that Acquiescence Rulings bind the SSA in the circuit where they apply). The Ruling applies when a claimant files a prior application resulting in a final decision of nondisability, and then later files a subsequent application under the same title of the Act and with an unadjudicated period. 1997 WL 742758, at *3; *see also Morales v. Comm'r of Soc. Sec. Admin.*, 2023 WL 3964160, at *2 (D. Ariz. June 13, 2023). In such a situation, "adjudicators will apply a presumption of continuing nondisability and determine that the claimant is not disabled with respect to that period, unless the claimant rebuts the presumption." Ruling, 1997 WL 742758, at *3.

A claimant may rebut the presumption by showing a "changed circumstance" affecting the issue of disability, and the Ruling provides examples of such a circumstance, including a change in age category, an increase in the severity of the claimant's impairments, the alleged existence of an impairment not previously considered, or a change

in the criteria for determining disability. *Id.* A claimant bears the burden of establishing a changed circumstance. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008) (explaining that *Chavez* imposes "an obligation on the claimant . . . to come forward with evidence of 'changed circumstances' in order to overcome a presumption of continuing non-disability").

An erroneous application of res judicata principles is harmful when the reviewing court cannot confidently conclude that the ALJ's decision would have been the same absent the error. *Terrey v. Comm'r of Soc. Sec. Admin.*, 2018 WL 3738203, at *8 (D. Ariz. Aug. 7, 2018); *see also Ogden v. Comm'r of Soc. Sec. Admin.*, 2021 WL 3721486, at *3 (D. Ariz. Aug. 23, 2021) (finding ALJ's error in applying presumption of nondisability harmless when ALJ conducted five-step sequential analysis and found no disability).

**B. Claimant Failed to Rebut the Presumption of Nondisability**

Claimant contends that medical records subsequent to the Prior Decision show a "deterioration in [Claimant's] physical health," and that the ALJ was thus wrong to find no increase in severity of her impairments. (Doc. 10 at 5.) Claimant, however, fails to satisfy her burden to establish changed circumstances. In her Opening Brief, she cites only to medical records and hearing testimony *after* the Prior Decision, (Doc. 10 at 3–4 ("Statement of Facts" listing medical evidence and symptoms arising after the Prior Decision), 8–9 (portion of "Argument" applying law to the record in this case addressing only medical evidence post-dating the Prior Decision)). A claimant may rebut the presumption of continuing nondisability by presenting new medical evidence that their condition has worsened. *See Taylor*, 765 F.2d at 875. But new medical evidence, alone, is not enough. To show changed circumstances, claimants must address the prior medical record and explain why the new evidence demonstrates that their condition has deteriorated. Here, Claimant presents new medical evidence but does not even mention the medical record considered by the Prior ALJ in reaching the Prior Decision. She thus fails to show that her circumstances have *changed*.

Unlike Claimant, the ALJ *did* compare the record considered by the Prior ALJ and

Claimant's new medical evidence, finding that there was no changed circumstance that would rebut the presumption of nondisability. Specifically, the ALJ noted that Claimant alleged residual effects from a brain tumor and resection, including right-sided weakness, poor balance and coordination, an inability to stand for long periods, dry eyes, double vision, and migraines, but noted that the Prior Decision reflected similar allegations and impairments. (AR 23–24.) The ALJ found that the current record showed no worsening of Claimant's gait or right arm weakness. (*Id.*) The ALJ also found that September 2022 treatment notes described Claimant's motor weakness and her cranial nerve and sensory deficits as stable, without specifying their degree. (AR 24.) And although the ALJ recognized that this evidence was "somewhat ambiguous," she found that it indicated stability. (*Id.*)[3]

The ALJ also found that Claimant's activities—including driving, grocery shopping independently, knitting and cross-stitching, preparing light meals, doing laundry, and taking classes—more clearly showed that her impairments had not increased in severity because they were similar to those described in the Prior Decision. (AR 24.) And the ALJ identified similarities between the Prior Application and the current claim, including the following: (1) Claimant used a prism lens for double vision both during the previously adjudicated period and during the period relevant to her current claim; (2) her migraines had not become more limiting, where she reported experiencing them two to three times per month and treating them with rizatriptan as needed; (3) her dry eyes and hypothyroidism had not increased in severity; and (4) Claimant's nonsevere anxiety remained nonsevere, given that she does not engage in mental health treatment. (AR 24–25.)[4] Claimant addresses none of the pertinent analysis in the ALJ's decision.

---

[3] While Claimant may dispute how the ALJ resolved this ambiguity, I must defer to the ALJ's rational conclusion concerning the medical record. *See Batson*, 359 F.3d at 1198; *see also Andrews*, 53 F.3d at 1039 (ALJ responsible for resolving ambiguities); *Orn*, 495 F.3d at 630 (when record could support more than one rational interpretation, "the ALJ's decision should be upheld").

[4] In her Reply, Claimant conclusorily asserts that the ALJ failed to "show [her] work." (Doc. 13 at 2.) This argument lacks merit given the ALJ's detailed analysis and comparison of the medical record before and after the Prior Decision.

## IV. CONCLUSION

Here, substantial evidence supports the ALJ's finding that the record reflects no change in the severity of Claimant's impairments. Claimant has thus failed to rebut the presumption of nondisability, and the ALJ properly applied principles of res judicata to find that Claimant is not disabled.

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter final judgment consistent with this Order and close this case.

Dated this 28th day of September, 2026.

Honorable Sharad H. Desai
United States District Judge